UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARUE JACKSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SEATTLE, et. al,<br><br>　　　　　Defendants. | CASE NO. C05-2034 JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a summary judgment motion by Defendants City of Seattle, Jason Diamond, and Simon Edison (Dkt. # 43). Having reviewed the motion together with all documents filed in support and in opposition, the court DENIES the motion in part and GRANTS it in part.

## II. BACKGROUND

This action turns on the March 2, 2003 encounter between Plaintiff Larue Jackson and Seattle Police Officers Jason Diamond and Simon Edison. Around 3:00 a.m. on March 2, Mr. Jackson arrived at an unlit, closed Shell gas station ("Shell station"), located at 7301 Rainer Avenue South. Jackson Dep. at 25, 33; Diamond Dep. at 7. Mr. Jackson entered the unfenced Shell station from the public sidewalk; he contends that he intended to use a pay phone located in the Shell station's parking lot. Jackson Dep. at 43. Mr. Jackson was accompanied by Dante Hawthorne, Kevin Butler, and Brian Wortham. Id. at 25.

ORDER – 1

Officers Diamond and Edison, on patrol in a marked police vehicle, noticed the four men and pulled into the Shell station. Diamond Decl. at 2; Edison Decl. at 2. The officers intended to contact the group pursuant to a Criminal Trespass Contract between the Shell station owner and the Seattle Police Department. Diamond Decl. at 2-3; Edison Decl. at 2-3; Underwood Decl., Ex. 1. The Criminal Trespass Contract provides that a private property owner authorizes Seattle police officers "to act on my behalf in requesting unauthorized person(s) found upon the property without legitimate/lawful purpose to leave the premises." Underwood Decl., Ex. 2. Pursuant to the Criminal Trespass Contract, the Shell station owner posted a "Criminal Trespass Prohibited/No Loitering" sign on a window of his business. Id.; Underwood Decl. at 2; Diamond Dep. at 4.

The parties dispute virtually every detail of the ensuing encounter that ultimately led to the arrest of Mr. Jackson and his three companions for trespassing and obstruction. Most significantly, the parties dispute whether the officers admonished Mr. Jackson, ordering him to leave the closed premises ten to fifteen minutes before the arrest, and whether Mr. Jackson intentionally disobeyed the officers' orders. The court reserves a detailed discussion of disputed facts for its later analysis.

It is undisputed that a prosecutor filed criminal trespass and obstruction charges against Mr. Jackson, set a trial date, yet ultimately dismissed the case. Carr Decl., Ex. 1. Although a state court found probable cause for the arrest of Mr. Jackson's three companions, no court has considered whether the officers had probable cause to arrest Mr. Jackson. See Carr Decl. Exs. 2-4.

Mr. Jackson asserts claims under 42 U.S.C. § 1983 ("§ 1983") against the City of Seattle ("City"), Officer Diamond, and Officer Edison alleging that they violated his constitutional rights because his arrest was not supported by probable cause. Compl. at ¶¶ 19, 21. In addition, Mr. Jackson alleges claims of malicious prosecution against all defendants. Id. at ¶ 17. Against the City alone, Mr. Jackson alleges negligent retention

ORDER – 2

of Officers Diamond and Edison. Id. at ¶¶ 13-16.  Defendants seek summary judgment against all claims.

### III.  ANALYSIS

In resolving this motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.    Mr. Jackson's Claims under 42 U.S.C. § 1983**

Section 1983 provides a remedy to an individual who suffers a violation of her rights under the Constitution or other laws at the hands of a person acting under the color of state law.  The City and the officers contend that Mr. Jackson has not suffered a violation of his Constitutional rights because his arrest was valid.  In addition, Officers Jackson and Diamond raise a qualified immunity defense.  The City argues that Mr. Jackson cannot establish municipal liability under § 1983.

For the reasons stated below, the court concludes that Mr. Jackson's § 1983 claims against Officers Diamond and Edison survive summary judgement, but grants summary judgment as to Mr. Jackson's § 1983 claim against the City.


### 1. Law Applicable to False Arrest Claim

Mr. Jackson alleges that Officers Diamond and Edison committed a false arrest in violation of his Constitutional rights under the Fourth Amendment. That a police officer must have probable cause to believe that a crime has been committed before arresting a suspect is a bedrock Fourth Amendment precept. Beck v. Ohio, 379 U.S. 89, 91 (1964). An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation omitted). Objective facts and circumstances known to the officer at the time of the arrest determine its validity. Beck, 379 U.S. at 96. The existence of probable cause defeats a § 1983 claim for false arrest. Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006).

### 2. Whether the Officers had Probable Cause to Arrest Mr. Jackson for Trespassing Raises Genuine Issues of Material Fact.

The officers argue that they had probable cause to arrest Mr. Jackson for trespassing. Washington's criminal trespass statute and the parallel provision of the Seattle Municipal Code ("SMC") provide that "[a] person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon the premises of another . . . ." RCW 9A.52.080; SMC § 12A.08.040(B)(1). It is a complete defense to criminal trespass that "[t]he actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain . . . ." RCW 9A.52.080. Taking these provisions together, whether the officers had probable cause to believe that Mr. Jackson was trespassing depends on whether the objective circumstances known to the officers indicated that Mr. Jackson could not reasonably believe he was on the property for a lawful purpose.

Mr. Jackson contends that he had a legitimate basis to be on the Shell station property. According to Mr. Jackson, he entered the Shell station to use a public

ORDER – 4

telephone located on the property. Jackson Dep. at 43. As soon as Mr. Jackson discovered that there was no phone in the booth, he began walking back to where he entered the parking lot. Id. at 43-44. As he was exiting, Officers Diamond and Edison arrived in their patrol vehicle and ordered Mr. Jackson back onto the premises. Id. at 43-47. When Mr. Jackson heard an officer tell him to "come here," he obeyed. Id. at 47. According to Mr. Jackson, both officers immediately grabbed him by his arms and slammed him onto the hood of their vehicle. Id. at 49-50. According to Mr. Jackson, the officers did not ask him why he was at the Shell station before they arrested him. Id. at 47-49.

The officers offer a different account of events in support of their claim of probable cause. Most significantly, the officers allege that they had two encounters with Mr. Jackson during the early morning hours of March 2, 2003. Diamond Decl. at 2-3; Edison Decl. at 2-3. During the initial encounter, the officers apparently contacted Mr. Jackson to ask him why he was on the closed premises. Id. According to the officers, Mr. Jackson stated that he intended to use the pay phone. Id. Knowing that the booth was empty, the officers ordered Mr. Jackson to leave the premises. Id. The officers allege that they arrested Mr. Jackson ten to fifteen minutes later when they returned and found Mr. Jackson still on the property. Id.

Taking the evidence in a light most favorable to Mr. Jackson, he produces sufficient evidence to suggest that the officers did not have probable cause to arrest him for trespassing. The use of a public telephone in a closed, yet unfenced, gas station is a facially legitimate purpose for being on the premises. According to Mr. Jackson's account, the officers did not see Mr. Jackson loitering on the property or exhibiting behavior that would lead a reasonable person to believe that he was there for an illegitimate purpose. According to Mr. Jackson's account, the officers arrested him without giving him a prior warning or an opportunity to explain his presence. These circumstances do not support probable cause. See, e.g., State v. Blair, 827 P.2d 356, 359 (Wash. Ct. App. 1992) (holding that an officer lacked probable cause to arrest a suspect

ORDER – 5

for trespassing where he failed to ask the suspect where he was going and for what purpose).[1] Cf. U.S. v. Dorsey, 418 F.3d 1038, 1042-43 (9th Cir. 2000) (holding that officers had probable cause to arrest for trespassing based, in part, on the fact that the officers warned the suspect not to enter the premises just one day prior to the arrest). While the officers need not rule out every reason for Mr. Jackson's presence on the property, probable cause demands more than a bare suspicion of criminal activity.

For these reasons, the court concludes that Mr. Jackson produces sufficient evidence to support his claim that Officers Diamond and Edison lacked probable cause to arrest him for trespassing.

### 3. Whether the Officers had Probable Cause to Arrest Mr. Jackson for Obstruction Raises Genuine Issues of Material Fact.

The officers alternatively contend that they had probable cause to arrest Mr. Jackson for obstruction of justice. A person is guilty of obstructing a police officer, if, with knowledge that the person obstructed is a public officer, he or she (1) intentionally and physically interferes with a public officer, (2) intentionally hinders or delays a public officer; or (3) intentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do so by a public officer. SMC § 12A.16.010.

There is strong evidence suggesting that Mr. Jackson disobeyed the officers' orders and physically resisted his arrest. See Diamond Decl. at 3-4; Edison Decl. at 3; Carr Decl., Ex. 3 at 43. Mr. Jackson disputes these facts, claiming that he fully cooperated with the officers and obeyed their orders. See Jackson Dep. at 45-63. To resolve the parties' different account of events is a jury's task. Since Mr. Jackson contends that he obeyed the officers' orders, the court concludes that he provides

---

[1] Blair involved a public housing complex under an agreement similar to the Criminal Trespassing Contract at issue; it authorized the Seattle Police Department to admonish anyone found trespassing and to arrest that person upon return. Blair, 827 P.2d at 357. The court in Blair found that the officer lacked probable cause even where the officer had previously admonished the suspect not to return to the housing complex just one month prior to the incident. Id. The court noted that probable cause was lacking because the officer failed to ask the suspect why he was on the premises.

ORDER – 6

evidence from which a jury could conclude that the officers lacked probable cause to arrest him for obstruction.

In sum, Mr. Jackson's false arrest claim raises genuine issues of material fact.

**4. Disputed Facts Prevent the Court from Deciding Qualified Immunity as a Matter of Law.**

The officers contend that qualified immunity insulates them from liability under § 1983. Qualified immunity provides a defense in a § 1983 action where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct. Saucier v. Katz, 533 U.S. 194, 201-05 (2001). In Saucier, the Supreme Court established a two-prong analysis for qualified immunity cases. Id. First, a court must determine whether the evidence alleged (resolving all disputes of fact in favor of the party asserting the injury) show that the officer's conduct violated a constitutional right. Id. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity. Id.

As noted in the previous section, Mr. Jackson's claim survives the first prong of the inquiry because he produces sufficient evidence to maintain that Officers Diamond and Edison violated the Fourth Amendment when they arrested him without probable cause.

The second prong under Saucier requires the court to determine whether the violated right was "clearly established." Id. at 205-06. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Here, the court considers whether the officers could have made a reasonable mistake concerning the legal constraints governing their conduct. Id. The inquiry focuses on reasonable legal mistakes, not factual mistakes. Id.

As already noted, the law regarding the necessity of probable cause to arrest is well settled. Nevertheless, whether a right is "clearly established" for purposes of

ORDER – 7

qualified immunity is an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.  In the context of this case, taking the evidence in a light most favorable to Mr. Jackson, a reasonable officer would not conclude that he had probable cause to arrest for trespassing or obstruction. According to the evidence Mr. Jackson offers, he was exiting an unfenced gas station when the officers arrested him without warning or an opportunity to explain his presence. To arrest for trespassing under these circumstances clearly violates the Fourth Amendment protection against unwarranted seizures.  Likewise, if, as Mr. Jackson contends, he cooperated with the officers, an arrest for obstruction is not objectively legally reasonable.

The court denies the officers' motion for summary judgment based on qualified immunity.

**5.    The City of Seattle is Not Subject to Municipal Liability.**

To prevail against the City under § 1983, Mr. Jackson must identify a municipal policy or custom that itself caused his injury.  See Bryan County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Id. at 403-04 (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Policy liability is predicated on practices of sufficient duration, frequency, and consistency such that the conduct has become the traditional method of carrying out the policy.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotations omitted). A plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" to its known or obvious consequences.  Brown, 520 U.S. at 407 (citing Canton v. Harris, 489 U.S. 378, 388-9 (1989)).   Even proof of gross negligence is insufficient to establish municipal liability under § 1983.  Id.

ORDER – 8

     Mr. Jackson alleges that the Criminal Trespass Contracts between the City Police Department and private property owners reflect a City policy to allow officers to make pretextual trespassing arrests. See Opp'n at 6.  It is undisputed that the agreements permit police officers to warn unauthorized persons found on private property to leave the premises. Underwood Decl., Ex. 1.  In alleging that the agreements lead to pretextual arrests, Mr. Jackson refers the court to a prior incident involving Officers Edison and Diamond. See Howell Decl., Exs. C, D.  In 2004, the officers arrested a suspect in the parking lot of a closed business under a Criminal Trespass Contract with the City. See id. A state court determined that the officers had probable cause to arrest the suspect, Myron Anderson. See Carr Decl., Ex.7.  Mr. Anderson was charged with assault. See Howell Decl., Ex. D.  A jury ultimately acquitted Mr. Anderson. See id.  Mr. Jackson argues that the acquittal of Mr. Anderson, combined with the arrest and dismissal of charges against Mr. Jackson, demonstrates a City policy favoring pretextual arrests.

     Even assuming *arguendo* that the officers made two improper arrests pursuant to Criminal Trespass Contracts, two arrests do not suggest a practice of sufficient duration, frequency, and consistency such that the conduct has become a traditional method of carrying out the policy. See Trevino, 99 F.3d at 918.

     More significantly, Mr. Jackson fails to produce any evidence showing that the City acted with deliberate indifference.  To establish deliberate indifference, Mr. Jackson must show that the City made a deliberate or conscious choice to expose him to a known risk. See Brown, 520 U.S. at 410.  Mr. Anderson's arrest does not constitute evidence that the City exposed Mr. Jackson to a known risk.  That a state court made a probable cause determination in Mr. Anderson's case suggests that the arrest was lawful. Moreover, Mr. Anderson was arrested in August 2004, well over a year after Mr. Jackson's March 2003 arrest. See Howell Decl., Ex. C.

ORDER – 9

The court dismisses Mr. Jackson's § 1983 claim against the City because he fails to allege sufficient evidence to raise a genuine issue of municipal liability.[2]

**B.   Mr. Jackson's Malicious Prosecution Claims**

Mr. Jackson alleges that the Defendant officers and the City committed the tort of malicious prosecution. Compl. at ¶ 17. Mr. Jackson appears to allege malicious prosecution claims under both § 1983 and Washington law. Id. Considering either claim, Mr. Jackson produces insufficient evidence to meet his burden.

**1.   Mr. Jackson's § 1983 Malicious Prosecution Claim Fails**.

To establish a federal malicious prosecution claim against the officers under § 1983, Mr. Jackson must produce evidence to rebut the presumption that the prosecutor filing the complaint exercised independent judgment in determining that probable cause existed for his arrest. See Newman v. County of Orange, 457 F.3d 991, 993 (9th Cir. 2006). The presumption that a prosecutor exercises independent judgment may be rebutted by evidence that the prosecutor was subject to "unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm, or that the officers knowingly supplied false information." Id. (quoting Smiddy v. Varney, 665 F.2d 261, 366 (9th Cir. 1981)). A plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir. 1994). "The question . . . is not whether the prosecutor, in the face of conflicting accounts, would have filed charges based on the plaintiffs' story, but whether she would have done so based on the officer's [account]." Newman, 457 F.3d at 995.

Mr. Jackson fails to provide any information to overcome the presumption of independent judgment. He does not submit evidence that the officers pressured the prosecutor to file charges. He does not allege that the officers omitted information or

---

[2]The court need not reach Defendants' motion in limine for an order precluding evidence of City policy and practice that was not produced during discovery (Dkt. # 52). The motion is rendered moot by the court's dismissal of Plaintiff's § 1983 claim against the City.

ORDER – 10

included false information in the incident report. The fact that Mr. Jackson's version of the encounter conflicts with that of Officers Diamond and Edison is not enough to defeat the presumption that a prosecutor exercises independent judgment. See Newman, 457 F.3d at 994. Under these facts, Mr. Jackson fails to rebut the presumption that a prosecutor exercised independent judgment in finding probable cause. Cf. Barlow v. Ground, 943 F.2d 1132, 1137-38 (9th Cir. 1991) (holding that plaintiff overcame the presumption of independent judgment where the arresting officers' reports omitted critical information, the officers' accounts conflicted, and an independent witness corroborated at least part of the plaintiff's version of events).

The court therefore dismisses Mr. Jackson's malicious prosecution claim under § 1983.

**2.    Mr. Jackson's Malicious Prosecution Claim under Washington Law Fails**.

Under Washington law, Mr. Jackson's malicious prosecution claim is likewise deficient.

A malicious prosecution claim arising from a criminal action requires proof of the following elements: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution. Clark v. Baines, 84 P.3d 245, 248 (Wash. 2004).

Mr. Jackson fails to allege sufficient facts to raise a genuine issue concerning the third element, malice. Malice is demonstrated by showing that "a defendant instituted criminal proceedings against a plaintiff: (1) without believing him to be guilty, (2) primarily because of hostility or ill will toward him, or (3) for the purpose of obtaining a private advantage against him. Peasley v. Puget Sound Tug & Barge Co., 125 P.2d 681, 689 (Wash. 1942) (internal quotations omitted). In some cases, where the evidence is sufficient to establish want of probable cause, a court may infer malice from that fact; but

ORDER – 11

this is not a necessary deduction. Bender v. City of Seattle, 664 P.2d 492, 501 (Wash. 1983). Mr. Jackson's malicious prosecution claim rests on two bare allegations: (1) the officers acted without probable cause, (2) the charges against him were ultimately dismissed. Mr. Jackson summarily concludes that the officers "maliciously prosecuted him." See Compl. at ¶ 18. In the instant case, the alleged lack of probable cause does not warrant an inference of malice. Mr. Jackson's contentions fail to suggest that the officers were prompted by feelings of "bitterness, animosity, or vindictiveness." Bender, 664 P.2d at 503. Mr. Jackson fails to set forth any evidence suggesting that the officers omitted or falsified material information, acted out of hostility, or filed the incident report for the purpose of personal gain.

The court dismisses Mr. Jackson's malicious prosecution claim under Washington law.

**C.    Mr. Jackson's Negligent Retention Claim Against the City**

Mr. Jackson alleges that the City negligently retained Officers Diamond and Edison knowing their likelihood to make pretextual arrests of citizens for trespassing. In order to establish negligent retention, a plaintiff must establish, *inter alia*, that the employer knew or should have known that the employee was incompetent or unfit for the position. Thomas v. City of Seattle, 395 F. Supp. 2d 992, 1001 (W.D. Wash. 2005) (citing Peck v. Siau, 827 P.2d 1108, 1110 (Wash. Ct. App. 1992)).

Mr. Jackson does not offer any evidence to show that the City or the Seattle Police Department knew or should have known that Officers Diamond and Edison were incompetent or unfit for the position. Indeed, Mr. Jackson himself concedes that negligent retention is a "weak claim" because he has been "unable to verify" the "numerous pretextual arrests" made by the officers. See Opp'n at 7.[3]

The court dismisses Mr. Jackson's negligent retention claim.

---

[3] Mr. Jackson does not seek a continuance to obtain additional discovery under Fed. R. Civ. Pro. 56(f).

ORDER – 12

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES in part and GRANTS in part Defendants' motion for summary judgment (Dkt. # 43).  This order leaves only Mr. Jackson's § 1983 claims against Officers Diamond and Edison for trial on November 28, 2006.

The court DENIES as moot Defendants' motion in limine (Dkt. # 52).

Dated this 20th day of October, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 13