The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LARUE JACKSON, | NO.  C05-2034 JLR |
| Plaintiff, | DEFENDANTS' TRIAL BRIEF |
| v. | |
| CITY OF SEATTLE, a municipal corporation; JASON DIAMOND; and SIMON EDISON, | |
| Defendants. | |

## I. INTRODUCTION

Defendants the City of Seattle, Jason Diamond, and Simon Edison respectfully submit this trial brief in accordance with the court's *Minute Order Setting Trial Date and Related Dates. Dkt. No. 18.*

## II. SUMMARY OF FACTS

**A.      Procedural posture.**

Defendants filed a motion for summary judgment dismissing all claims against all defendants, which was noted for September 22, 2006.  *Dkt. No. 43.*  The court granted that motion in part, dismissing all claims other than the § 1983 false arrest claims against the defendant officers. *Dkt. No. 66.*

DEFENDANTS' TRIAL BRIEF - 1
C05-2034 JLR
3019-027532  117544

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

**B.     Facts underlying the lawsuit.**

This lawsuit alleging false arrest, malicious prosecution, negligent retention, and municipal liability claims arises from Plaintiff's arrest for criminal trespass and obstructing on March 2, 2003 by Seattle Police Officers Simon Edison and Jason Diamond ("the defendant officers"). Plaintiff and three of his friends were arrested at a closed, privately-owned Shell gas station at 730 Rainier Avenue South in Seattle, Washington ("the Shell station") at around 3:00 in the morning.

The southwest part of the Shell station's parking lot is often used as a location for narcotics activity. The area is also known for gang-related activity and violence. Each of the defendant officers has made several arrests at the Shell station and in the general vicinity for narcotics use and sales, assaults, and various other crimes. It is a "hot spot" for criminal activity that the defendant officers frequently patrolled when they worked in the South Precinct.

Since October 2002, the Shell station authorized the Seattle Police Department's South Precinct police officers to require unauthorized persons found there without any legitimate or lawful purpose to leave the premises. In fact, the Shell station had signed a Criminal Trespass Contract (also referred to as Trespass Enforcement Authorization) ("CTC") to this effect. That authorization existed through the spring of 2006. Consequently, the CTC was in effect on the night of Plaintiff's arrest. The Shell station had posted large "Criminal Trespass Prohibited/No Loitering" signs on the property.

Around 2:55 a.m. Sunday morning, the day of the arrest, the uniformed defendant officers drove through the Shell station parking lot in their marked patrol car. The Shell station was closed; its lights were not on and the parking lot was dark. As the officers entered the parking lot, they saw two large men, later identified as Larue Jackson (Plaintiff) and Dante Haythorne, huddled in the southwest corner of the parking lot. The officers could not see any reason for the men to be huddled there; the Shell station was closed, it was nearly 3:00 a.m., and the men did not appear to own the property or have any other lawful authority to be there. The

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

officers decided to tell the men to leave.

When the officers approached the men, Officer Edison informed them that the area is a high crime, drug, and gang activity area, and that they had no right to be at the closed gas station. Plaintiff refused to leave, saying he was using the pay phone. There was no pay phone on the property. Officer Diamond told them that they were trespassing and again told them that they needed to leave. Then the officers left.

Ten or fifteen minutes later, the officers returned. The men were still in the parking lot. Two more men had joined them, making the group a total of four. The men were quite large; most were heavier and several inches taller than Officer Diamond. The officers contacted the subjects and ordered them to leave. The men refused.

Given the circumstances – the size of the men, their refusal to comply with officer orders, the fact that the officers were outnumbered and in an area known for drugs and violence - the officers felt concern for their safety. For officer safety reasons, Officer Diamond asked the men to remove their hands from their pockets during the contact. They refused. Not only did Plaintiff refuse to show his hands, he intentionally started walking away from the officers. When Officer Diamond ordered him to stop, Plaintiff refused, stating "What the fuck for?" and continued to walk away. The officers were now even more concerned for their safety because the men were not in one area and it appeared that Plaintiff was trying to separate the officers by forcing one to pursue him.

The men in the group became increasingly hostile. They yelled obscenities, puffed their chests out, and assumed aggressive postures. One held his hand near his jacket as if to threaten a weapon. The officers were concerned the men would become violent, and reasonably believed they needed to get the situation under control. At that point, they believed they had probable cause to arrest the men for various offenses, including criminal trespass and obstructing. They decided to arrest. Plaintiff and Mr. Haythorne were the largest of the four and presented the more obvious threat. Officer Diamond was closest to Plaintiff, and attempted to take him into

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

custody.  Officer Edison attempted to arrest Mr. Haythorne.

Mr. Haythorne became violent and physically resisted Officer Edison's attempts to escort him to the patrol vehicle.  The other two men also became increasingly more confrontational and aggressive, and one - Kevin Butler - shouted expletives and ordered the officer to let Mr. Hawthorne go.  Mr. Butler reached into his coat as if to retrieve a weapon, saying, "Whatcha going to do, Officer…you going to shoot me?" Fearing for his safety, Officer Edison radioed for immediate backup.  Mr. Haythorne attacked Officer Edison, pulling the officer to the ground and head butting him violently.   Officer Diamond saw Officer Edison struggling against Mr. Haythorne on the ground, but could not assist because he could not gain control over Plaintiff.

Officer Diamond repeatedly ordered Plaintiff to stop and reveal his hands, but Plaintiff did not obey.  Officer Diamond attempted to bring Plaintiff's arms behind his back to handcuff him, but Plaintiff resisted.  Consequently, Officer Diamond placed his arms around Plaintiff in a "bear hug" and attempted to escort him to the patrol car.  Plaintiff continued to physically struggle as Officer Diamond escorted him to the police vehicle.

Back up units arrived.  With their assistance, Plaintiff and Mr. Haythorne were handcuffed.  The other men were also taken into custody.  The men were cited for criminal trespass and obstructing.

Ultimately, the prosecutor decided to prosecute all four individuals.  The officers had no involvement in this decision.  Mr. Haythorne was charged with and plead guilty to assault.  The other three were charged as cited – with criminal trespass and obstructing.  With respect to both Kevin Butler and Brian Wortham, the court found there was probable cause for their arrests.  Although Plaintiff's case was set for trial, there was no request for a probable cause determination.  The officers were never in fact called to testify, but the case was ultimately dismissed because the prosecution's witnesses did not appear.  Nearly two years later, Plaintiff filed this lawsuit.  He is presently in jail for charges of Second Degree Homicide and may not be available to attend trial.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

## III.  LAW AND ARGUMENT

The sole remaining issues for trial are whether Plaintiff's arrest lawful and whether the defendant officers are entitled to qualified immunity.  There is no, and never has been, any excessive force claim in this litigation.  Moreover, there is no, and never has been, any Fourteenth Amendment claim based on Plaintiff's alleged treatment once arrested.

### A.   Plaintiff's Arrest was Lawful.

#### 1.   The initial contact of Plaintiff the second time was not an arrest.

Plaintiff may argue that the initial contact of Plaintiff the second time the officers arrived at the Shell station and the commands issued for officer safety purposes constituted an arrest.  Such an argument is erroneous.

The officers had a lawful basis to contact Plaintiff in their investigation of a possible criminal trespass violation.  Terry v. Ohio, 392 U.S. 1, 22 (1968); Alexander v. County of Los Angeles, 64 F.3d 1315, 1319 (9th Cir. 1995); Washington v. Wheeler, 108 Wash.2d 230, 234, 737 P.2d 1005, 1007 (1987); Washington v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445, 448 (1986).  Plaintiff, with three other suspects, was on the property of an obviously closed privately-owned business in the middle of the night.  There was no readily apparent, legitimate reason for them to be there.  See RCW 9A.52.080; SMC § 12A.08.040(B)(1) (criminal trespass where a person knowingly enters or remains unlawfully in or upon the premises of another).  The officers had already ordered Plaintiff and Mr. Haythorne to leave, and they had not.  Instead, they had two more individuals join them.  Consequently, the officers lawfully attempted to contact Plaintiff and his group.  Terry, 392 U.S. at 22; Alexander, 64 F.3d at 1319; Wheeler, 108 Wash.2d at 234; Kennedy, 107 Wash.2d at 4.

During this Terry stop, the officers were lawfully entitled to take precautions to ensure their safety.  United States v. Hensley, 469 U.S. 221, 235-36 (1985); United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir. 1987).  "Use of force" does not convert a stop into an arrest if it is justified by a concern for the officer's personal safety. Hensley at 235-36; Buffington at 1300.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Plaintiff does not dispute that the officers had reasonable officer safety concerns.  Nor does he dispute any of the facts upon which the officers based their safety concerns:  (1) the officers were outnumbered 2:1; (2) it was nearly 3:00 a.m. and it was dark; (3) the area was known to the officers to be a high crime/high violence area; and (4) three large males with Plaintiff were yelling at the officers, screaming profanity at them, and assuming threatening postures as if they were armed.  He does not deny that he responded to officer commands by saying "What the fuck for?," a response that is somewhat less complacent and obedient than the image Plaintiff attempted to paint in his opposition to the defendants' summary judgment motion.  *See Dkt. No. 46, ¶ 11.*  He does not deny that he resisted and, in fact, his cousin, Mr. Butler, admits that Plaintiff was resisting.  Further, Plaintiff does not claim the scene was under control or that the officers had no reason to fear for their safety.  The officers' safety concerns were reasonable.

In his deposition, Plaintiff apparently claimed that the defendant officers asked him to approach a police car, grabbed his arms, and "slammed" him onto the hood of the car.[1]  These are facts he failed to allege in his complaint.  *See Dkt. No. 3, p. 10.*  In any case, courts have upheld as investigatory stops (as opposed to arrests) contacts with more significant "use of force" than merely asking a suspect to "approach" a police car, "grabbing" the suspect "by both arms," or "slamming" the suspect onto the hood of the car.  *See Dkt. No. 54, p. 2.*  Officers may handcuff individuals, and may even use guns, without effecting an arrest.  Robinson v. Soland County, 278 F.3d 1007, 1014 (9th Cir. 2002); Alexander, 64 F.3d at 1321 (upholding investigatory stop where, following vehicle stop, officers surrounded car with weapons drawn).  As noted, Plaintiff has not claimed that the force used was unlawful or inappropriate.  The officers' contact with him prior to officially arresting him did not constitute an arrest.

---

[1] Plaintiff's hyperbolic claim he was "slammed face-first" on the hood of the car is belied by his claim that he only sustained a couple small cuts to his knuckles and hands and no injury whatsoever to his face. *Dkt. No. 55 (Howell Decl.), Ex. A, 72:16-20.*  It is also belied by the fact that he did not claim excessive force in this lawsuit. *Dkt. No. 3, p. 10.*

DEFENDANTS' TRIAL BRIEF - 6

C05-2034 JLR
3019-027532  117544

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

2.     **Defendant officers had probable cause to arrest.**

The officers had probable cause to arrest Plaintiff.  Where probable cause exists, a § 1983 claim for false arrest cannot stand. Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006) (citing Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam)).  Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed. Ybarra v. Illinois, 444 U.S. 85, 91 (1979).  The validity of an arrest is determined by objective facts and circumstances known to the officer at the time of arrest.  Beck v. Ohio, 379 U.S. 89, 96 (1964); Washington v. Huff, 826 P.2d 698, 701 (Wash. App. 1992).  "It is immaterial whether or not the [arrestee] was actually violating the law at the time of the arrest if in fact his conduct was such as to lead a reasonable prudent officer to believe in good faith he was violating the law." Sennett v. Zimmerman, 314 P.2d 414, 416 (Wash. 1937) (citing Coles v. McNamara, 241 Pac. 1 (Wash. 1925)).  An arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  Accordingly, as long as an officer has probable cause to arrest based on any conduct, an arrest is valid under the Fourth Amendment. Id.

a.     ***Defendant officers had probable cause to arrest for Criminal Trespass.***

Washington's Criminal Trespass statute and the parallel provision of the Seattle Municipal Code provide that "[a] person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon the premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080; SMC § 12A.08.040(B)(1).  The defendant officers found Plaintiff, with three other individuals, in the parking lot of a closed, dark Shell station at nearly 3:00 a.m. in an area known for narcotics activity.  Posted in a public area was at least one sign prohibiting criminal trespass and loitering.  The pay phone Plaintiff claimed he was using was non-existent.  The CTC showed the property owner did not want people like Plaintiff on the property off-hours.  The officers had legal authority to order Plaintiff and his group to leave the premises.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

When the officers ordered him to leave, Plaintiff instead remained - without lawful authority.  Under the exact same facts, two courts have already found probable cause to arrest with respect two other members of Plaintiff's group.  *Dkt. No. 47, Exs. 3 and 4.*  The defendant officers had probable cause to arrest Plaintiff for criminal trespass.

Plaintiff may try to claim that his presence at the Shell station was lawful because it was a "public premise."  RCW 9A.52.090 creates a "public premises" defense to a criminal trespass prosecution:

> In any prosecution under [RCW 9A.52.080], it is a defense that . . . (2) The premises were <u>at the time open to members of the public</u> and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or (3) The actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain. . ."

<u>Id.</u> (emphasis added).  As a preliminary matter, the Shell station was not public property; it was a privately owned business.  In addition, the Shell station was not "at the time open to members of the public."  In fact, it was closed; the lights were off, and it was dark.   Consequently, Plaintiff cannot establish the exception set forth in subpart (2).  Further, any subpart (3) argument fails for lack of evidence that Plaintiff reasonably believed that the Shell station's owner would allow him to enter and remain on the property.  The fact that the Shell station was closed, had posted no trespassing/no loitering signs, and had signed a CTC authorizing officers to remove trespassers precludes any such reasonable belief.

In any case, whether or not the "public premise" defense may have existed with respect to Plaintiff does not mean that the officers did not have probable cause to arrest him for the criminal trespass.  The elements of the criminal trespass statute do not include any requirement that there be no conceivable defense to the charge.  RCW 9A.52.080; SMC 12A.08.040(B)(1). Officers are not required to first ensure an individual will be convicted, nor are they required to first ensure that the suspect does not have a valid legal defense for his criminal activity; officers need only have a reasonable belief under the facts and circumstances known to them that the suspect has committed a

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

crime. Ybarra, 444 U.S. at 91; Brinegar v. United States, 338 U.S. 160, 175 (1949); Washington v. Krantz, 164 P.2d 453, 454-55 (Wash. 1946).

### b.   Defendant officers had probable cause to arrest for Obstructing.

A person is guilty of obstructing a public officer if, with knowledge that the person obstructed is a public officer, he or she (1) intentionally and physically interferes with a public officer, (2) intentionally hinders or delays a public officer; or (3) intentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do so by a public officer. SMC § 12A.16.010.

Plaintiff clearly knew that the defendant officers were public officers.  The officers were wearing Seattle Police uniforms and driving a Seattle Police marked patrol car.  The defendant officers observed Plaintiff (1) refusing to leave the Shell station as lawfully ordered, (2) refusing to place his hands on the patrol vehicle as lawfully ordered by the officers for reasons of officer safety, (3) ignoring several lawful orders to stop as he walked away from officers, (4) physically resisting Officer Diamond's attempt to arrest him, and (5) hindering or delaying Officer Diamond's arrest of him.  The defendant officers had no reason to believe Plaintiffs acts were not intentional.  These facts gave the defendant officers probable cause to arrest Plaintiff for Obstructing.

## B.   The Defendant Officers Are Entitled to Qualified Immunity.

Police officers are entitled to qualified immunity from suit for claims based upon their official actions. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Furfaro v. City of Seattle, 984 P.2d 1055, 1063 (Wash. App. 1999).  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided. Saucier v. Katz, 533 U.S. 194, 201 (2001); Estate of Lee v. City of Spokane, 2 P.3d 979, 991 (Wash. App. 2000).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

incompetent or those who knowingly violate the law." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991); <u>Westmoreland v. Washington</u>, 869 P.2d 71, 75 (Wash. App 1994).

**1.    Defendant officers are qualifiedly immune from suit under federal law.**

Under federal law, where a police officer asserts qualified immunity for alleged constitutional violations, the court must apply a two-part analysis. <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 871 (9th Cir. 1993). It must (1) determine whether the plaintiff has alleged a violation of a right that is clearly established and stated with particularity; and (2) consider whether, under the facts alleged, a reasonable official or officer could have believed that his conduct was lawful. <u>Alexander</u>, 64 F.3d at 1319. Thus, to defeat a qualified immunity claim, Plaintiff must (1) identify the specific federal right allegedly violated, (2) prove that the right was "clearly established" at the time of the violation, and (3) prove that reasonable officers could not have believed their actions were lawful under the facts and circumstances known to them at the time. <u>Romero v. Kitsap County</u>, 931 F.2d 624, 627 (9th Cir. 1991).

A court should dismiss for qualified immunity a claim based upon probable cause if there was <u>any</u> reasonable basis at the time to conclude that probable cause existed. <u>See</u> <u>Cross v. City of Des Moines</u>, 965 F.2d 629, 632 (8th Cir. 1992). Even if it is later determined that probable cause did not exist, the entitlement to qualified immunity still survives. <u>See</u> <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1443 (9th Cir. 1991) (observing that a subsequent determination that probable cause did not exist is inconsequential to a claim of qualified immunity).

Plaintiff has no clearly established right not to be arrested when officers find him violating the law. Nor is there any clearly established right that officers consider possible defenses prior to making an arrest for Criminal Trespass. Rather, the converse is true. Washington law and precedence establish that officers have the ability to arrest where they have probable cause to believe a crime has been committed or, in the case of the misdemeanor, the officers view the misdemeanor. <u>See</u> <u>supra</u> at part III.A.2.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Moreover, no authority establishes that the defendant officers could not have reasonably believed that their conduct was reasonable based upon the facts and circumstances known to them.  No authority refutes that an officer can reasonably believe he has probable cause to arrest for Criminal Trespass he finds a group of four men huddled in the corner of a closed, dark gas station – an area known for narcotics activity – at 2:55 in the morning notwithstanding publicly posted no trespass and no loitering signs.  Moreover, no authority refutes that an officer can arrest an individual for resisting arrest and refusing to comply with lawful orders.  The defendant officers, as would reasonable officers in their shoes, reasonably believed they had the requisite cause to arrest Plaintiff.  They are qualifiedly immune from suit under federal law.

**2.      Defendant officers are qualifiedly immune from suit under state law.**

Under Washington State law, police officers have common law qualified immunity from state tort claims if their conduct meets a three-part test:  (1) they are carrying out a statutory duty, (2) according to the procedures dictated by statute and superiors, and (3) they acted reasonably.  Estate of Lee, 2 P.3d at 991.

The defendant officers were carrying out statutory duties.  See RCW 10.31.100 ("Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor involving. . .criminal trespass under criminal trespass under RCW 9A.52.070 or 9A.52.080, shall have the authority to arrest the person"); SMC § 12A.02.140(B) ("A peace officer may arrest a person without a warrant if the officer has probable cause to believe that such person has committed a crime").  See also Mike v. Tharp, 583 P.2d 654, 657 (Wash. App. 1978) (officers are empowered to enforce the law).  The defendant officers acted according to procedures dictated by statute.  See id.  Moreover, the defendant officers acted in accordance with the procedures dictated by their superiors.  Lastly, as set forth above, they acted reasonably.  See supra at part III.A.  The defendant officers are qualifiedly immune under state law.

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

**3.**   **Defendants reserve their right to assert qualified immunity at trial.**

Defendants sought summary judgment on the issue of qualified immunity.  The court denied that portion of the motion, stating that disputed issues of fact precluding a holding that the officers were qualifiedly immune under state or federal law.  Defendants will present a qualified immunity defense at trial and, to that end, will submit to this court special interrogatories to address those disputed facts.  Should the jury determine the disputed facts in the defendant officers' favor, the claims against the defendant officers must be dismissed for qualified immunity.

DATED this 10th day of November, 2006.

STAFFORD FREY COOPER

By: _____
      Ted Buck, WSBA #22029
      Heather L. Carr, WSBA #29780
      Attorneys for Defendants

DEFENDANTS' TRIAL BRIEF - 12

C05-2034 JLR
3019-027532  117544

Certificate of Service

I certify that on the date noted below I electronically filed this document entitled DEFENDANTS' TRIAL BRIEF with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:


Lembhard G. Howell, 133
lemhowell@qwest.net
Daniel A. Mares, 34059
Law Offices of Lembhard G. Howell, PS
720 Third Avenue, Suite 2105
Seattle, WA 98104-1830
(206) 623-5296
FAX: (206) 628-6474
   *Attorneys for Plaintiff Larue Jackson*


and I certify that I have caused to be served in the manner noted below a copy of the above-listed document to the following non CM/ECF participants:

[ ]   Via Facsimile
[ ]   Via First Class Mail
[ ]   Via Messenger

DATED this 10th day of November, 2006, at Seattle, Washington.


/s/ Heather L. Carr via ECF

DEFENDANTS' TRIAL BRIEF - 13

C05-2034 JLR
3019-027532  117544

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885